**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BULLO OBSE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-1670 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 12–13, 18 |
| | : | | |
| DOUGLAS A. COLLINS, Secretary, | : | | |
| Department of Veterans Affairs, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Bullo Obse, a nurse working for the Department of Veterans Affairs, brings

claims of disparate treatment, retaliation, and a hostile work environment against his employer.

Defendant Secretary of Veterans Affairs Douglas A. Collins moves to dismiss, or, in the

alternative, for summary judgment. For the reasons explained below, the Court denies the

Secretary's motion for summary judgment as premature but grants in part and denies in part the

Secretary's motion to dismiss.

## II. FACTUAL BACKGROUND

The facts alleged in the complaint are as follows.[1] Mr. Obse is an Ethiopian-born refugee

who practices Islam. Am. Compl. ("Compl.") ¶ 1, ECF No. 8. He has worked for the

Department of Veteran Affairs at its Washington Medical Center since March 2012, most

---

[1] Because, for the reasons explained in Part IV.B *infra*, the Court denies the Secretary's
motion for summary judgment without prejudice on procedural grounds, the Court does not
recount any facts not alleged in the complaint.

recently as a staff nurse.  *Id.* ¶¶ 8–10.  During his tenure, Mr. Obse has had multiple supervisors, including Octavia Kellam, Tanya Curry, and Alma Holley.  *See id.* ¶¶ 11–13.

Initially, Mr. Obse's "performance ratings were at least satisfactory[,] and there were no complaints from providers."  *Id.* ¶ 14.  But once Ms. Kellam began supervising him in June 2021, problems arose.  *Id.* ¶ 16.  Mr. Obse alleges that Ms. Kellam would "routinely" call him "Mr. Obese," and "was visibly unhappy" after Mr. Obse took a one-month trip to Ethiopia— questioning him upon his return about whether he was "even a nurse."  *Id.* ¶¶ 18–19.  And Mr. Obse continually "complain[ed] about [the] lack of any breaks" for lunch or the restroom. *Id.* ¶ 16.  He also alleges that Ms. Kellam shadowed him longer than she shadowed other employees.  *Id.* ¶ 17.

Then, Mr. Obse was transferred twice.  After Mr. Obse "raised his concerns about Ms. Kellam's comments that all refugees have January 1st birthday[s] just like" Mr. Obse, he was "assigned to a different clinic."  *Id.* ¶ 20.  "No reasons, such as the need for coverage, were given for the reassignment . . . ."  *Id.* ¶ 21.  Mr. Obse was later transferred again "[a]fter he complained about inappropriate comments a few more times."  *Id.* ¶ 25.  This time he was transferred to a new clinic that was a "non-primary care clinic" performing only vaccinations. *Id.*  Once again, "no reasons were given for" the reassignment.  *Id.*  Mr. Obse alleges that "[o]ther nurses outside his protected class," including Pamela G. Reid-Williams, Vinielle Acha-Morfaw, and John B. McGlorthan, "were not treated the same" because despite going "through remedial orientation" they were "not reassigned."  *Id.* ¶ 27; *see also id.* ¶¶ 57, 65 (listing additional comparators).  Mr. Obse does not allege that any of these nurses were in the same group as him or that they shared the same supervisors.

2

In December 2022, Mr. Obse was "forced . . . to vacate his office for new employees." *Id.* ¶ 23. Mr. Obse had furnished his office with his own equipment, including "a wall mounted shelf and [an] adjustable workstation." *Id.* After being forced to vacate his office, "[h]e was not able to have his items returned." *Id.* He alleges that other nurses, like Vinielle Acha-Morfaw and John B. McGlorthan, who were younger, non-Ethiopian, and non-Muslim, "were not deprived of their workstations or their equipment." *Id.* ¶ 24. He does not allege, however, whether these other nurses were transferred to different groups, as he was, or whether the removal of his office was related to the transfer.

In April 2023, Mses. Kellam and Curry gave Mr. Obse "an unacceptable proficiency rating," which he describes as "downgraded sharply" from his previous ratings under a prior supervisor. *Id.* ¶ 29. Mr. Obse alleges that, notwithstanding the low proficiency rating, "Ms. Kellam admitted [that Mr. Obse] did a great job in the injection clinic." *Id.* Mr. Obse alleges that other nurses without his protected characteristics did not receive lower proficiency ratings, but he does not allege whether they had the same supervisor, performed the same work, or had similar performances to him. *Id.* ¶ 30.

In October 2023, Mr. Obse alleges that he "was denied [an] opportunity to present conclusions on shadowing Patient Aligned Care Teams at [the] Martinsburg VA Medical Center." *Id.* ¶ 31. Mr. Obse alleges nothing about what this opportunity meant or why he was denied it. He also alleges that, at the same time, he "was not allowed to serve as the Charge Nurse and to orient a new Licensed Practical Nurse." *Id.* ¶ 32. And, from then on, Mses. Kellam and Wade (his new supervisor after November 2023) "never condemned personnel's comments made in [the] presence of [Mr. Obse] such as 'it can only be a terrorist if it's a Muslim man.'"

*Id.* ¶ 34.  In November 2023, Mr. Obse's "telework was revoked," and he was denied "an alternative to his telework request."  *Id.* ¶¶ 35–36.

In December 2023, Mr. Obse alleges that he "was chastised publicly and yelled at after raising his concerns about the expiration date of" a vaccine.  *Id.* ¶ 37.  He alleges that Ms. Wade told him: "[Y]ou Africans [sic] immigrants do not know anything about nursing, after all, I am now a nurse executive."  *Id.*  The next day, Mr. Obse was "instructed to return his laptop immediately" without being given a reason.  *Id.* ¶ 38

Mr. Obse alleges that, beginning in April 2023, he began making formal discrimination reports to an equal-employment-opportunity counselor.  *Id.* ¶ 5.  As his complaints developed, he alleges that his supervisors "became even more hostile."  *Id.* ¶ 40.  In May 2024, after Ms. Kellam provided an affidavit in one of his cases, Mr. Obse alleges that he "was constantly excluded from crucial meetings, assignments, and information."  *Id.* ¶ 39.  And he alleges it got worse after he requested a hearing in July 2024.  *Id.* ¶ 40.  In October 2024, "Ms. Wade accused [him] of alleging another nurse . . . harassed him," and by December 2024 "Ms. Wade was constantly interfering with [his] job duties."  *Id.* ¶ 41.  But Mr. Obse alleges no details about this exclusion or interference.

Finally, in January 2025, Mr. Obse alleges that Ms. Wade instructed him to "stop restricting emails from her[ ] and to vacate the facility within 30 minutes of the end of his duty."  *Id.* ¶ 42.  Mr. Obse alleges he had been encrypting his emails to comply with privacy requirements and that he had been using the gym after hours.  *Id.*

Based on these allegations, Mr. Obse sued the Secretary, alleging discrimination based on race, national origin, gender, religion, and age as well as unlawful retaliation and a hostile work

4

environment.  *See* Compl. ¶¶ 44–99.  The Secretary now moves for summary judgment or, in the alternative, to dismiss.

### III.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

### IV.  ANALYSIS

The Court begins with the procedural posture and then addresses Mr. Obse's motion under Fed. R. Civ. P. 56(d) to permit additional discovery before summary judgment.  Because the Court agrees with Mr. Obse that summary judgment is premature, it then considers the Secretary's motion to dismiss.

### A.  Procedural Posture

The Secretary's motions arrive in a perplexing procedural posture.  As noted above, he moves both to dismiss for failure to state a claim and for summary judgment.  Defendants typically move to dismiss for failure to state a claim in lieu of filing an answer—although the defense may also be asserted in a motion for judgment on the pleadings or at trial.  *See* Fed. R. Civ. P. 12(h)(2).  Here, the Secretary has already filed an answer, does not move for judgment on the pleadings, and is not at trial.  But Mr. Obse does not argue the motion is untimely and

5

thereby forfeits the issue.  *Cf. United States v. Sheffield*, 76 F. Supp. 3d 148, 152 n.5 (D.D.C. 2014).[2]

As for the Secretary's request for summary judgment, such a motion "usually 'is premature unless all parties have had a full opportunity to conduct discovery.'"  *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 530 (D.C. Cir. 2019) (quoting *Covertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012)).  The parties have not begun discovery in this Court, although they appear to have conducted discovery in administrative proceedings.

To be sure, there is no requirement that a party wait to move for summary judgment until after the close of discovery.  "[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b).  But if a party moves for summary judgment before the close of discovery, the nonmoving party may respond by arguing under Fed. R. Civ. P. 56(d) that evaluating summary judgment is premature and further discovery is necessary.  *See Haynes*, 924 F.3d at 530.  Mr. Obse has done so here.  *See* Pl.'s Mot. Relief Pursuant to Fed. R. Civ. P. 56(d) ("Pl.'s Mot.") at 2–3, ECF No. 18.

---

[2] Some courts in this District, including this Court, have construed Rule 12(b)(6) motions filed after an answer as motions for judgment on the pleadings because the standards are "essentially [the] same."  *Alemayehu v. Abere*, 298 F. Supp. 3d 157, 163 (D.D.C. 2018) (collecting cases).  More recently, however, some courts in this Districts have thoughtfully reasoned that the two motions "differ in substance" and "demand[ ] a different response from the court" and therefore should not be treated interchangeably.  *Murthy v. Dep't of Air Force*, 326 F.R.D. 47, 48 (D.D.C. 2018); *see also Wall v. Reliance Standard Life Ins.*, No. 20-CV-2075 (EGS/GMH), 2022 WL 594540 (D.D.C. Feb. 28, 2022) (following *Murthy*).  *But see Rollin v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (holding that the standard for a motion for judgment on the pleadings is "functionally equivalent to a Rule 12(b)(6) motion"); *Mpoy v. Rhee*, 758 F.3d 285, 287 (D.C. Cir. 2014) (similar).  This disagreement is not implicated here because Mr. Obse has forfeited any timeliness argument.

### B. The Secretary's Motion for Summary Judgment Is Premature

When considering a Rule 56(d) motion, courts consider three factors. The "movant must (1) outline the particular facts the party defending against summary judgment intends to discover and describe why those facts are necessary to the litigation; (2) explain why the party could not produce those facts in opposition to the pending summary-judgment motion; and (3) show that the information is in fact discoverable." *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (cleaned up). A motion requesting additional discovery before summary judgment when discovery has not yet closed "should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'" *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Berkeley v. Home Ins.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995)).

The first factor is not in dispute. Mr. Obse argues that further discovery is necessary because he needs additional documents as well as the opportunity to depose potential witnesses, including Ms. Wade (one of his supervisors) and potential comparators, many of whom he identifies by name. *See* Pl.'s Mot. at 2. This Court has held before that the need to depose important witnesses may justify granting a Rule 56(d) motion. *See Cogdell v. Kale*, No. CV 19-2462 (RC), 2021 WL 2416904, at *3 (D.D.C. June 14, 2021). The Secretary, for his part, acknowledges that Mr. Obse "directly states which pieces of information he seeks and why he believes them necessary to this litigation." Def.'s Opp'n Pl.'s Mot. Relief Pursuant Fed. R. Civ. P. 56(d) ("Def.'s Opp'n"), at 2, ECF No. 22. The first factor is therefore satisfied.[3]

---

[3] For this reason, the Court also rejects the Secretary's argument that the proposed discovery is too speculative. *See* Def.'s Opp'n at 2–3. Mr. Obse seeks, among other things, a deposition of his former supervisor. Such a deposition is an important step in discrediting the legitimate, non-discriminatory reason for his decision that the Secretary has put forth. *See* Def.'s Mot. at 13–14; *see also Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc)

The Court also finds that Mr. Obse has met the second factor. As noted before, discovery has not begun in this case, so it is intuitive why Mr. Obse has not been able to obtain the employer records or take the depositions he desires. The Secretary argues, however, that Mr. Obse's motion fails the second prong because the parties engaged in "extensive discovery" during the previous administrative proceedings and Mr. Obse "fails to show why he failed to acquire the information he now seeks" during those proceedings." Def.'s Opp'n at 2. That argument carries some force. Assuming Mr. Obse could have obtained the discovery he now seeks in prior administrative proceedings, it might make sense to require him to do so there rather than waiting for federal court. And it appears based on the evidence presented to the Court in the motions, that the parties conducted significant discovery in the administrative proceedings—including depositions. *See* Def.'s Mot. at 4 (representing that the administrative proceeding included depositions for Mr. Obse and Ms. Kellam as well as written discovery).

That said, to the extent courts in this District have considered the issue, they appear to be wary of effectively precluding a plaintiff from obtaining discovery in federal court based on—generally more limited—discovery mechanisms in administrative proceedings. *See, e.g.*, *Ho v. Garland*, No. CV 20-912 (EGS), 2022 WL 4289667, at *14 (D.D.C. Sep. 17, 2022) (denying motion for summary judgment because plaintiff sought to depose his former supervisor and had "never deposed his former supervisor during the administrative proceedings"); *Cogdell*, 2021 WL 2416904, at *3 (finding Rule 56(d) satisfied because plaintiff could not depose certain witnesses in prior EEOC proceedings); *Alston v. Johnson*, 208 F. Supp. 3d 293, 299 (D.D.C. 2016) (granting Rule 56(d) motion where plaintiff "received only partial responses to his

---

(explaining that after an employer "articulate[s] legitimate, nondiscriminatory reasons for the challenged employment decision," the employee must then "discredit the employer's explanation").

discovery requests during the administrative phase and there [were] still relevant material documents that he [did] not have").  Courts appear to take the view that "[t]he existence of a prior administrative proceeding . . . does not affect [a] plaintiff's entitlement to discovery" in federal court.  *Friends v. Astrue*, No. CIV.A.06 01762 ESH, 2007 WL 1954420, at *4 n.6 (D.D.C. July 5, 2007); *see also, e.g.*, *Wiggins v. Powell*, No. CIV.A.02-1774(CKK), 2005 WL 555417, at *24 (D.D.C. Mar. 7, 2005) (denying summary judgment even though "some of these witnesses ha[d] given testimony in the context of [the plaintiff's] EEOC complaint relating to his non-selection"); *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 25 (D.D.C. 2013) (declining to convert motion to dismiss into a motion for summary judgment because "the plaintiff in the instant action has had no opportunity for discovery beyond the administrative process").

Moreover, it is not clear to the Court whether, in this case, Mr. Obse could have obtained the same discovery in the administrative proceedings.  Applicable regulations appear to vest administrative judges with considerable discretion over the scope of discovery in Equal Employment Opportunity Commission proceedings.  *See* 29 C.F.R. § 1614.109(d) ("Both parties are entitled to reasonable development of evidence on matters relevant to the issues raised in the complaint, but the administrative judge may limit the quantity and timing of discovery.").  Therefore, the Court concludes that Mr. Obse has met his burden under the second factor because discovery has not begun in federal court, and the Secretary has not overcome that showing because he fails to present sufficient evidence that this discovery was in fact available to Mr. Obse in the administrative proceeding.

As for the final prong, the Court sees no reason why Mr. Obse cannot depose Ms. Wade and the potential comparators or obtain through discovery documents about his reassignments.  *See* Pl.'s Mot. at 2.  The Secretary suggests in his opposition that Mr. Obse has not satisfied this

prong, but he advances no argument or explanation supporting that position. *See* Def.'s Opp'n at 2. The Court will therefore grant Mr. Obse's Rule 56(d) motion and deny the Secretary's motion for summary judgment without prejudice. To be clear, the Court expresses no view on whether Mr. Obse is entitled to all the discovery he requests. The Court finds only that there is at least some important discovery identified in Mr. Obse's motion that remains outstanding. *Cf. Cogdell*, 2021 WL 2416904, at *3 (explaining that because the nonmovant had "satisfactorily explained why it does not have some key facts at its disposal, the Court will not dwell on" others).

### C. Mr. Obse States a Claim for Some of His Counts

Having addressed the procedural posture and the Secretary's motion for summary judgment, the Court now turns to the Secretary's motion to dismiss. The Court notes, however, that the parties often do not distinguish between which arguments fit within the summary-judgment standard and which are appropriate for a motion to dismiss. The Court has done its best to address only those questions appropriate for resolution on a motion to dismiss and base its decision only on the allegations in the complaint.

### 1. Mr. Obse Plausibly Alleges Disparate Treatment Because of His National Origin

Most of the counts in Mr. Obse's complaint involve various forms of discriminatory disparate treatment. He alleges he was discriminated against because of his race (Count I), national origin (Count II), gender (Count III), religion (Count IV), and age (Count VI). Compl. ¶¶ 44–75, 84–80. To state a claim for disparate treatment, Mr. Obse must allege that (1) because of his protected trait (2) he suffered "an adverse employment action." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (Kavanaugh, J.). The Secretary argues that Mr. Obse fails

both requirements. *See* Def.'s Mot. Dismiss & Summ. J. ("Def.'s Mot.") at 9–13, 16, ECF No. 12.

###### a. *Mr. Obse Alleges a Plausible Inference of National-Origin and Race Discrimination*

The Secretary's leading argument is that Mr. Obse fails to allege that he was treated differently than other similarly situated employees and thus fails to plausibly allege his disparate treatment was because of his protected traits. Def.'s Mot. at 9–11. The Court agrees that Mr. Obse has not adequately alleged that his purported comparators were similarly situated to him in a meaningful sense, but that is not fatal to all his claims.

A plaintiff may allege a plausible inference of discriminatory intent by alleging that similarly situated employees were treated differently than he was. *See Keith v. U.S. Gov't Accountability Off.*, No. CV 21-2010 (RC), 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022). At the motion-to-dismiss stage, the complaint need not allege that the similarly situated employees are nearly identical to the plaintiff, but it must allege sufficient facts to show that "the comparators are in fact 'similarly situated' in some meaningful respect." *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530–31 (D.C. Cir. 2025). It must "include[ ] enough detail [for a court to] plausibly infer that that discrimination caused the defendant's differential treatment of the plaintiff." *Id.* at 531. What counts as enough detail "cannot be reduced to a mechanical formula; it is sensitive to the specific context of each case, and courts must draw on their 'judicial experience and common sense' in determining whether it is met." *Id.* at 530 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Mr. Obse's allegations of similarly situated employees are too conclusory to support a plausible inference of discrimination. He alleges that while he was "forced . . . to vacate his office for new employees" and leave his personal equipment behind, other employees that lacked

11

his protected characteristics "were not deprived of their workstations or their equipment." Compl. ¶¶ 23–24.  Yet he does not allege that, like him, these other employees were "reassigned" to new clinics around the same time—an intuitive explanation for why he was asked to vacate his previous workspace.  *Id.* ¶ 20.  Nor does he allege any other information about these purported comparators, such as whether they also outfitted their workstations with equipment brought from home.  *See id.* ¶ 23.

Similarly, Mr. Obse alleges that while he was transferred to a "vaccines only" unit and received "an unacceptable proficiency rating," other nurses simply "went through remedial orientation" without being reassigned or receiving a lower rating.  *Id.* ¶¶ 25–27, 29–30.  But Mr. Obse alleges nothing about these nurses' conduct, experience levels, or responsibilities, so he cannot establish a plausible inference that "discrimination caused" his "differential treatment."  *Joyner*, 140 F.4th at 531; *see also Roberts-Gregory v. Am. Ass'n for the Advancement of Sci.*, No. 25-1436 (RC), 2026 WL 1732951, at *8 (D.D.C. June 16, 2026) (applying *Joyner* and finding that the complaint alleged insufficient detail about the comparators).

Perhaps most concerning, Mr. Obse does not allege that any of his comparators shared the same supervisor (or supervisors) as him or were part of the same teams.  That matters because of the way that Mr. Obse frames his suit.  As explained above, the similarities necessary for a comparator to create a plausible inference of discrimination are "sensitive to the specific context of each case."  *Joyner*, 140 F.4th at 531.  Here, Mr. Obse frames his allegations around a change in his treatment based on his fraught relationship with new supervisors, especially Ms. Kellam.  He alleges that under his previous supervisor, he had worked for the same group for eleven years without issue.  *See* Compl. ¶¶ 14, 21, 29.  Only after Ms. Kellam took over does

12

Mr. Obse allege that he faced discrimination—being repeatedly transferred after complaining about inappropriate comments, receiving poor proficiency ratings, and more. *See id.* ¶¶ 18, 20, 22, 25, 29. Given that Mr. Obse frames his claims around a change in his treatment after he was placed under new supervision, his failure to allege that the comparators shared those supervisors undercuts any inference that unlawful discrimination, as opposed to different management, motivated his treatment. Put another way, he alleges that his supervisors discriminated against him without alleging that those supervisors treated anyone differently.[4]

Mr. Obse counters that he has done enough for the motion-to-dismiss stage because he has identified "specific individuals" as comparators as opposed to "vague references to 'others.'" Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss & Mot. Summ. J. ("Pl.'s Opp'n") at 21, ECF No. 17 (internal quotation omitted). Maybe so. But he still needs to allege some information *about* those individuals to plausibly allege that they are "in fact 'similarly situated.'" *Joyner*, 140 F.4th at 531. Although Mr. Obse protests that comparator analysis is not tested until summary judgment, *see* Pl.'s Opp'n at 21, in *Joyner* the D.C. Circuit rejected allegations of a comparator on appeal from a motion to dismiss. *See* 140 F.4th at 533 (contrasting the standard for comparators for a motion for summary judgment and a motion to dismiss). As in *Joyner*, Mr. Obse has "pleaded essentially no facts at all to show that his identified comparators were similarly situated to him in relevant respects except that" they worked as nurses at the same place. *Id.*

Mr. Obse's failure to adequately plead that he was treated differently from similarly situated employees does not doom all his claims, however, because there are other ways to

---

[4] Mr. Obse states in his brief that some of his comparators have the same supervisors. *See* Pl.'s Opp'n at 24. But the Court can find no supporting allegations in the complaint.

establish a plausible inference of discrimination. *See Fisher v. Bessent*, No. 23-CV-00329 (CRC), 2025 WL 2779791, at *8 (D.D.C. Sept. 30, 2025). A plaintiff may also establish a plausible inference of discrimination by alleging "remarks indicating bias in the employment process." *Id.*

The Court concludes that Mr. Obse has alleged a plausible inference of national-origin discrimination because he alleges that his disparate treatment stemmed from his complaints about insensitive comments related to his national origin. Specifically, he alleges that in December 2022 he "was assigned to a different clinic because he raised his concerns about Ms. Kellam's comments that all refugees have January 1st birthday[s]." Compl. ¶ 20. And, when he continued to complain about "inappropriate comments," he was transferred again. *Id.* ¶ 25. Although perhaps most relevant to a retaliation claim, the connection between Mr. Obse's complaints about inappropriate comments regarding his national origin and his subsequent transfers supports a plausible inference that his national origin motivated the transfers.

Another statement by Ms. Wade supports a sufficient inference at this preliminary stage of both national-origin and race discrimination. Mr. Obse alleges that Ms. Wade told him: "You African immigrants do not know anything about nursing . . . ." Compl. ¶ 37. The mere utterance of a "racially charged" or otherwise discriminatory comment will not always create a plausible inference of discrimination. *See, e.g.*, *Bilal v. Metro. Police Dep't*, No. CV 25-189 (JEB), 2025 WL 1917959, at *4 (D.D.C. July 11, 2025) (finding no inference of discrimination where the plaintiff had "not indicated when the comments were made or how they were connected to her denial of promotion"). In this case, however, three considerations combine to establish a plausible allegation of discrimination sufficient to survive a motion to dismiss. First, the statement itself directly connects Mr. Obse's nationality to his poor job performance. Second,

14

the comment was made by his "direct supervisor." *Id.* ¶ 33.  Finally, the statement was made only a few weeks after Mr. Obse alleges his telework was revoked, a decision which itself was made shortly after he alleges Ms. Wade became his supervisor. *Id.* ¶¶ 33, 35–37.  At this stage, where the Court must accept this allegation as true and draw all inferences in Mr. Obse's favor, this suffices to allege a causal link.  *See Bryant v. Leavitt*, 475 F. Supp. 2d 15, 25 (D.D.C. 2007).[5]

But these statements can plausibly support only discrimination claims based on national origin and race, not Mr. Obse's other protected traits.  To be sure, Mr. Obse alleges other insensitive remarks tied to other protected traits as well.  For example, he alleges that Mses. Kellam and Wade "never condemned" comments made in his presence such as "it can only be a terrorist if it's a Muslim man." *Id.* ¶ 34.  Failing to condemn a comment, however, is not the same as making the comment.  And Mr. Obse does not even allege that his supervisors knew about this remark.  *Cf. Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1991) ("An employer may be held liable for the harassment of one employee by a fellow employee (a

---

[5] Curiously, and contrary to the allegation in the complaint, Mr. Obse swore in a declaration that it was Ms. Kellam, not Ms. Wade, who made this statement.  *See* Pl.'s Opp'n, Ex. 3, Decl. of Bullo Obse ¶ 12.  He further swore that Ms. Kellam made the statement "[f]rom at least October 31, onwards," meaning it was made repeatedly. *Id.*  That differs markedly from his allegations that the statement was made by Ms. Wade during a specific incident on December 7, 2023, when Mr. Obse was being "chastised publicly" for raising concerns about a vaccine's expiration.  Compl. ¶ 37.  Further complicating the matter, Mr. Obse cannot decide who made the statement even within his opposition brief.  *Compare* Pl.'s Opp'n at 10 (assigning the statement to Ms. Kellam), *with id.* at 33 (ascribing the statement to Ms. Wade).  These contradictions concern the Court, particularly given the severity of the accusations and their importance to the applicable legal standard.  Counsel has an independent obligation to ensure that all "factual contention[s]" in its filings "have evidentiary support" "to the best of [counsel's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).  For present purposes, however, the sworn statements in Mr. Obse's declaration are not properly before the Court on a motion to dismiss, so the Court considers only the allegation in the complaint.

non-supervisor) if the employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action.").

### b. Mr. Obse Alleges at Least One Adverse Job Action

The Secretary also argues that Mr. Obse fails to allege that he suffered adverse actions under Title VII. *See* Def.'s Mot. at 11–13. Specifically, the Secretary argues that "[m]ost" of Mr. Obse's alleged actions do not constitute adverse actions, which implicitly concedes that some of them pass muster at this stage. *See id.* at 11.

Without determining whether every purportedly adverse action qualifies, the Court concludes that at least Mr. Obse's allegation regarding his second transfer and the revocation of his telework plausibly constitute adverse job actions. The Supreme Court recently clarified that a plaintiff need only show "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Miss.*, 601 U.S. 346, 356 (2024). It expressly *rejected* the view that Title VII discrimination claims require the plaintiff to prove "a significant employment disadvantage." *Id.* at 359. Here, Mr. Obse alleges that after complaining about "inappropriate comments" he was reassigned to a "non-primary care clinic" where he could "perform vaccin[ations] only." Compl. ¶ 25. The Court finds that this meaningful change in Mr. Obse's job responsibilities qualifies as an adverse action. *See Desmarais v. Wright*, No. CV 23-1541 (LLA), 2026 WL 523022, at *5 (D.D.C. Feb. 25, 2026) (collecting cases holding that even less significant harms satisfied the adverse-action requirement); *see also Muldrow*, 601 U.S. at 365 (Kavanaugh, J., concurring in the judgment) (explaining that the majority's "some-harm requirement" is satisfied by showing a change regarding "money, time, satisfaction, schedule, convenience, commuting costs or time, prestige, status, career prospects, interest level, perks, professional relationships, networking opportunities, effects on family obligations, or the

16

like").  Similarly, a revocation of telework can, at least in some circumstances, constitute an adverse job action at this stage.  *See Dixon v. Blinken*, No. CV 22-2357 (RDM), 2024 WL 4144105, at *3 (D.D.C. Sept. 11, 2024) ("Several decisions from this Court, moreover, establish that denial or revocation of a telework schedule constitutes an adverse change to the 'terms, conditions, or privileges of employment.'" (internal quotation omitted)).

### 2.  Mr. Obse Adequately Alleges a Retaliation Claim.

To state a claim for "unlawful retaliation," Mr. Obse must plausibly allege that "(1) he engaged in statutorily protected activity; (2) [the Secretary] took a materially adverse action against him; and (3) his protected activity was a but-for cause of that adverse action."  *Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024) (cleaned up).  The Secretary challenges the second and third elements, but the Court is unconvinced.  *See* Def.'s Mot. at 17–20.

First, the Court concludes that Mr. Obse has alleged at least one materially adverse action against him.  The adverse-action requirement for retaliation claims is greater than that discussed above for discrimination claims.  *See Muldrow v. City of St. Louis, Miss.*, 601 U.S. 346, 357 (2024) (distinguishing between the standard for adverse actions in retaliation and discrimination claims because the retaliation standard was adopted "for reasons peculiar to the retaliation context").  To support a retaliation claim, the adverse action must be material, meaning it "must be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

The Court finds that the alleged deprivation of a charge-nurse position suffices at this stage to satisfy the adverse-action element.  Mr. Obse alleges that in October 2023 he was denied the opportunity to serve as a charge nurse rather than a staff nurse.  Compl. ¶¶ 2, 32.  Although it

is somewhat difficult to discern, the complaint indicates that a charge nurse is a more senior position than a staff nurse and that the charge-nurse position comes with additional responsibilities. *See id.* ¶ 12 (identifying one of Mr. Obse's supervisors as a charge nurse); *id.* ¶ 32 (suggesting charge nurses received the additional responsibility of "orient[ing]" more junior nurses). Thus, Mr. Obse was plausibly denied "a tangible opportunity to advance [his] career." *Román v. Castro*, 149 F. Supp. 3d 157, 173 (D.D.C. 2016) (quoting *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009)). Although the Secretary insists that this denial was only temporary, *see* Def.'s Mot. at 12, the evidence supporting that point is not properly before the Court on a motion to dismiss. *See Haymon v. District of Columbia*, 610 F. Supp. 3d 101, 108 (D.D.C. 2022).

Second, the Court finds that Mr. Obse has adequately alleged a plausible inference of causation. The Secretary argues that to establish a causal inference through temporal proximity he must allege that he engaged in protected activity within three months of a materially adverse action, rather than the five-month gap that Mr. Obse alleges. Def.'s Mot. at 17–18. The pedigree of this three-month requirement is well-established in the context of summary judgment. *See, e.g.*, *Dunbar v. Duffy*, No. 13-CV-872, 2025 WL 973448, at *6 (D.D.C. Mar. 31, 2025) ("More than three months passed between Plaintiffs' EEO activity and Defendant's challenged actions—and courts have repeatedly found that generally, the protected activity must occur no more than three months from the date of the adverse action complained of to establish causation."), *aff'd*, No. 25-5201, 2026 WL 121009 (D.C. Cir. Jan. 15, 2026). Its grip at the motion-to-dismiss stage, however, is less certain. To be sure, the D.C. Circuit has repeatedly rejected some causal inferences based on temporal proximity as too implausible at the motion-to-dismiss stage, but those cases involved longer gaps in time. *See, e.g.*, *Spence v. United States*

18

*Dep't of Veterans Affs.*, 109 F.4th 531, 540 (D.C. Cir. 2024) (ten-month gap); *Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020) (fifteen-year gap); *Crawford v. Garland*, No. 20-5355, 2022 WL 1634557, at *3 (D.C. Cir. May 24, 2022) (per curiam) (eighteen-month gap); *see also Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015) (declining to "decide whether a five-month time lag without more would be sufficient to render [the plaintiff's] claim plausible").

Although a close call, the Court finds that Mr. Obse's allegations here have nudged his claim over the plausibility threshold. As in *Harris*, the Court does not decide whether the five-month gap alone suffices to create a plausible inference of causation because Mr. Obse has supported his causal inference with other allegations too. *See id.* at 69. Mr. Obse alleges that he engaged in protected activity "[t]hroughout [his] employment." Compl. ¶¶ 5–6. Importantly, he backs up that allegation with specific dates when he made formal complaints alleging unlawful discrimination, including April 7, 2023; May 11, 2023; December 13, 2023; January 24, 2024; July 18, 2024; January 29, 2025; May 7, 2025; and possibly October 4, 2024. *Id.* ¶¶ 5, 40–41. One of those dates, in May 2023, falls within about five months of the alleged October 2023 denial of a charge-nurse rotation. *Id.* ¶¶ 5, 32.

Moreover, as discussed above, Mr. Obse alleges that on two occasions he was transferred after complaining about inappropriate comments made by Ms. Kellam. *Id.* ¶¶ 20, 25; *see also id.* ¶ 22 (alleging that "each time [Mr. Obse] raised his concerns about inappropriate comments, Ms. Kellam responded by inventing another performance issue"). Regardless of whether these transfers constitute materially adverse actions or whether the complaints meet the definition of protected activity, they suggest a pattern of reprisals against Mr. Obse for his complaints. These alleged responses by the same supervisor against Mr. Obse, when combined with a proximity of

19

five months, support a sufficient inference that the later denial of a charge-nurse position was in retaliation for Mr. Obse's protected activity to entitle him to discovery allowing him to uncover further evidence of causation beyond only temporal proximity.[6]

### 3. Mr. Obse Fails to State a Hostile-Work-Environment Claim.

A hostile-work-environment claim requires a plaintiff to plausibly allege "that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (cleaned up). Mr. Obse argues that he has alleged such severe or pervasive mistreatment because various people made, in total, three hostile comments. Pl.'s Opp'n at 32. The Court disagrees.

In evaluating whether an employee's alleged treatment was sufficiently severe or pervasive to make out a hostile-work-environment claim, courts look "to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). This standard is "demanding." *Phillips v. Rubenstein*, No. CV 05-00862 (ESH), 2007 WL 9760157, at *10 (D.D.C. Oct. 29, 2007). "[A] few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).

---

[6] Mr. Obse also attempts to support a causal inference by arguing that the denial of his charge-nurse position occurred within roughly two weeks of Ms. Kellam completing an affidavit regarding one of his cases. Pl.'s Opp'n at 30. But even setting aside whether a supervisor completing an affidavit (as opposed to the plaintiff making a report) counts for purposes of temporal proximity, the Court can find no allegation regarding an October affidavit in the complaint, which is the only place the Court may look for purposes of a motion to dismiss.

Here, Mr. Obse's allegations of three inappropriate comments suggest neither severe nor pervasive mistreatment.[7]  He alleges a supervisor commented that "all refugees have January 1st birthday[s]," Compl. ¶ 20, an unidentified speaker offered that "it can only be a terrorist if it's a Muslim man," *id.* ¶ 34; and another supervisor stated that "you African[ ] immigrants do not know anything about nursing," *id.* ¶ 37.  *See* Pl.'s Opp'n at 32.  These comments, "although by no means ideal workplace conduct," are neither severe nor pervasive enough to create an abusive work environment.  *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 98 (D.D.C. 2007) (finding "five discrete acts over the two-year period as well as infrequent inappropriate comments and staring" insufficient).

Mr. Obse's allegations are weaker than those the D.C. Circuit considered insufficient in *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005).  There, "three separate coworkers," on "different occasions," told the plaintiff to "go back to Trinidad" or "go back to where she came from." *Id.* at 408.  The court held that these comments were insufficient as a matter of law to support a hostile-work-environment claim.  *See id.* at 416–17.  "At best, they constitute[d] exactly the sort of 'isolated incidents' that the Supreme Court has held cannot form the basis for a Title VII violation." *Id.* at 417.  Here, as in *George,* Mr. Obse alleges only three comments made by different individuals.  And the comments here span almost a year.  *See* Compl. ¶¶ 20, 34, 37.  Moreover, while the comments in *George* displayed a pattern of the same animus—that the plaintiff did not belong—the comments that Mr. Obse alleges are less unified and, in some cases, more difficult to parse.  Mr. Obse's allegations are thus similarly insufficient.  Although

---

[7] Although Mr. Obse encourages the Court to consider the "totality of the circumstances[,] namely the entire course of conduct collectively," he never explains what other events he believes contribute to his hostile-work-environment claim.  Pl.'s Opp'n at 32. Mr. Obse has therefore forfeited any such argument.  *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005).

*George* involved a motion for summary judgment, this Court has found that a hostile-work-environment claim founded on "a few offhand comments" could not survive a motion to dismiss either. *Smith v. De Novo Legal, LLC*, 905 F. Supp. 2d 99, 103 (D.D.C. 2012).[8]

Mr. Obse's contrary argument relies on the D.C. Circuit's decision in *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013) (per curiam). As Mr. Obse sees it, in *Ayissi*, the D.C. Circuit suggested that a single racial epithet sufficed to support a hostile-work-environment claim, *id.* at 577, so the three comments he alleges here must be enough. *See* Pl.'s Opp'n at 32.

*Ayissi-Etoh*, however, cannot withstand the weight Mr. Obse places on it. In that case, the D.C. Circuit held that the combination of two racially insensitive comments, including yelling at the plaintiff to "get out of my office n[*****]," could support a hostile-work-environment claim. *Ayissi-Etoh*, 712 F.3d at 574, 577. The Court observed that "us[ing] a deeply offensive racial epithet when yelling at [the plaintiff] to get out of the office" alone "might well have been sufficient to establish a hostile work environment." *Id.* at 577. But that

---

[8] One court has questioned the applicability of *George* to a motion to dismiss given that *George* arose in the context of summary judgment. *See Tennant v. District of Columbia*, No. CV 19-2949 (BAH), 2020 WL 4464505, at *8 (D.D.C. Aug. 3, 2020). Relying on the Supreme Court's decision in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002), the *Tennant* court reasoned that the evidentiary standard for establishing a *prima facie* case of causation at summary judgment differed from the allegations required to plausibly state a claim. 2020 WL 4464505, at *8. True enough; the standards are different. Here, however, unlike in *Swierkiewicz*, the Court is not testing the plausibility of a causal inference. *See* 534 U.S. at 510–11. (Although, as discussed above, the plausibly standard still has something to say about causal inferences. *See Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 n.2 (D.C. Cir. 2025) (discussing *Swierkiewicz*).) Rather, the Court simply concludes that Mr. Obse fails to state a claim because even if he proved all the allegations in his complaint, he still would not have established the severe or pervasive conduct necessary to support his claim. In other words, he has not alleged unlawful conduct at all because he has not alleged that a hostile work environment existed. *See Laughlin v. Holder*, 923 F. Supp. 2d 204, 220 (D.D.C. 2013) ("Here, however, even accepting Laughlin's factual allegations as true, the Court concludes that she has not alleged conduct that is 'sufficiently severe or pervasive' to state a plausible hostile work environment claim." (internal quotation omitted)); *Ross v. Georgetown Univ.*, No. CV 18-0671 (ABJ), 2019 WL 2452326, at *9 (D.D.C. June 12, 2019) (similar).

was because "'perhaps no single act can more quickly alter the conditions of employment' than 'the use of an unambiguously racial epithet such as "n[*****]" by a supervisor.'" *Id.* (quoting *Rodgers v. W.-S. Life Ins.*, 12 F.3d 668, 676 (7th Cir. 1993)).  Then-Judge Kavanaugh penned a concurrence emphasizing the unique severity of that comment, explaining that "[n]o other word in the English language so powerfully or instantly calls to mind our country's long and brutal struggle to overcome racism and discrimination against African-Americans." *Id.* at 580 (Kavanaugh, J., concurring).  Here, Mr. Obse alleges no such slur or epithet; rather, his allegations are "more akin to the sort of derogatory remarks that courts in this Circuit have deemed nonactionable in the past." *Toomer v. Mattis*, 266 F. Supp. 3d 184, 196 (D.D.C. 2017) (distinguishing *Ayissi-Etoh* and collecting cases).  Indeed, the comments here appear less severe than the three comments deemed insufficient in *George,* as explained above, which provides a closer comparison than *Ayissi-Etoh*.[9]

## V.  CONCLUSION

For the foregoing reasons, the Court grants Mr. Obse's Rule 56(d) motion, denies without prejudice the Secretary's motion for summary judgment, and grants in part and denies in part the Secretary's motion to dismiss.  Counts III, IV, VI, and VII are dismissed, but the rest remain.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 31, 2026                                    RUDOLPH CONTRERAS
                                                                 United States District Judge

---

[9] Mr. Obse also requests leave to amend his complaint.  Pl.'s Opp'n at 33.  Because the Secretary does not respond to this request, the Court will grant it.  Mr. Obse may amend his complaint within thirty days of this decision.